IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES LENEGAN, )
)
    Petitioner, )
)
v. ) Civil Action No. 3:19CV221–HEH
)
MARK BOLSTER,[1] )
)
    Respondent. )

## MEMORANDUM OPINION
(Granting Motion to Dismiss)

James Lenegan, a federal inmate proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("Present § 2241 Petition," ECF No. 1). Lenegan contends that the Federal Bureau of Prisons ("BOP") has improperly calculated his federal sentence. Respondent filed a Motion to Dismiss, asserting that the Present § 2241 Petition is an improper successive petition and an abuse of the writ. (ECF No. 13.) Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Lenegan has not responded. For the reasons set forth below, Respondent's Motion to Dismiss (ECF No. 13) will be granted. Lenegan's Present § 2241 Petition (ECF No. 1) will be denied because the Present § 2241 Petition is an improper successive petition and an abuse of the writ.

---

[1] Lenegan is currently incarcerated at the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"). As such, the Court substitutes Mark Bolster, Acting Warden at FCI Petersburg as the Respondent in this action. *See* Fed. R. Civ. P. 25(d).

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Lenegan is currently serving a 185-month sentence, as imposed by the United States District Court for the Eastern District of Pennsylvania. (*See* ECF No. 14–9, at 2.)

### A. Lenegan's First § 2241 Petition

On June 20, 2016, Lenegan filed a petition pursuant to 28 U.S.C. § 2241 ("First § 2241 Petition") in the United States District Court for the Western District of Pennsylvania. *See Lenegan v. Recktenwald* (*Lenegan I*), No. 16–cv–159 Erie, 2017 WL 6194753, at *2 (W.D. Pa. Oct. 18, 2017), *report and recommendation adopted by* 2017 WL 6032149 (W.D. Pa. Dec. 6, 2017). In his First § 2241 Petition, Lenegan claimed:[2]

> The [BOP] failed to calculate my federal sentence and Good Conduct Time (["]GCT["]), whenever the Sentencing Judge ordered my sentence to be concurrent with my state sentence, which my sentence should have begun on February 5, 2008 and I should have been awarded GCT from that date.
> . . . .
> I should have received 84 days of [GCT] credited towards my federal sentence. . . .
> Also in reviewing the record/my sentencing you will notice that the Court misapplied my sentencing guidelines under § 5G1.3, whenever they applied subsection (c), rather than subsection (b).

(ECF No. 14–6, at 4.) As relief, Lenegan requested: "Grant me all my state time and all the GCT credited that I am entitled to receive." (*Id.* at 10.)

On October 18, 2017, a United States Magistrate Judge in the Western District of Pennsylvania issued a Report and Recommendation that addressed Lenegan's claims on

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, capitalization, and punctuation in the quotations from Lenegan's submissions. Additionally, the Court's corrects the citations, punctuation, and capitalization in the quotations from the decision on Lenegan's First § 2241 Petition. The Court also alters the footnote numbers in the quotation from that decision.

the merits and recommended that Lenegan's First § 2241 Petition be denied. *See Lenegan I*, 2017 WL 6194753, at *1. In the Report and Recommendation, the Court provided the following summary of the relevant procedural history and factual background of the case:

> The Petitioner has a lengthy criminal history. On January 28, 2008, while he was serving state sentences imposed by the Court of Common Pleas of Bucks and Philadelphia Counties, he was arrested by federal authorities pursuant to federal criminal charges filed in the United States District Court for the Eastern District of Pennsylvania (the "federal district court") at docket number 2:07–CR–689. The federal district court issued a writ of habeas corpus ad prosequendum directing the warden of the state correctional facility at which the Petitioner was incarcerated (SCI Chester) to produce him for prosecution in federal court. Pursuant to the writ's authority, the Petitioner was removed from the physical custody of state authorities by the United States Marshals Service.
> Although the Petitioner was temporarily transferred to the physical custody of federal authorities, the state maintained "primary custody" (sometimes referred to as "primary jurisdiction") over him. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. *Ponzi v. Fessenden*, 258 U.S. 254 (1922); *see, e.g., Bowman v. Wilson*, 672 F.2d 1145, 1153–54 (3d Cir. 1982); *George v. Longley*, 463 F. App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); *Elwell v. Fisher*, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. *See, e.g., Bowman*, 672 F.2d at 1153–54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. *George*, 463 [F. App'x] at 138 n.4. When federal authorities obtained physical custody of the Petitioner pursuant to the writ the Commonwealth maintained primary custody over him because a prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the sending sovereign unless and until it

3

relinquishes jurisdiction over him. *See, e.g., Ruggiano v. Reish*, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003); *see also Elwell*, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus ad prosequendum, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction."). The receiving sovereign—in this case, the federal government—is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. *Id.*

A jury subsequently convicted the Petitioner in his federal criminal case and on July 23, 2009, the federal district court sentenced him to a 220-month term of imprisonment (later reduced to 185 months), with three years of supervised release to follow for: Conspiracy to Burglarize Pharmacies, in violation of 18 U.S.C. § 2118(d); Pharmacy Burglary, and Aiding and Abetting, in violation of 18 U.S.C. §§ 2118(b) & 2; and Possession of Controlled Substances with Intent to Distribute, and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c), & 18 U.S.C. § 2. The federal sentencing Order issued on that date provided the following:

> The defendant is hereby committed to . . . a total term of . . . 220 MONTHS on each of Counts 25 and 26 and a term of 120 months on Count One, all to be served concurrently. This sentence shall be served partially concurrently with the sentence imposed on May 20, 2005, by Judge David W. Heckler of the Bucks County Court of Common Pleas for burglary and criminal trespass of not less than 2 1/2 years nor more than 9 years in case number CP-09-CR-0007454-2004. Specifically, the within sentence shall be served concurrently with the said Bucks County sentence [as] of February 5, 2008.

On September 22, 2009, federal authorities returned the Petitioner to state authorities in satisfaction of writ of habeas corpus ad prosequendum and a federal detainer was lodged with the Pennsylvania Department of Corrections. Approximately five years later, on October 28, 2014, state authorities paroled him from his state sentence and released him to federal authorities to complete service of his federal sentence. In 2015, the federal district court reduced his term of imprisonment from 220 months to 185 months.

On June 20, 2016, the Petitioner filed with this Court the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[3] A federal habeas court may only extend a writ of habeas corpus to a federal

---

[3] The Respondent acknowledges that the Petitioner has exhausted all available administrative remedies.

inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). The Petitioner claims that the BOP should calculate his federal sentence to have commenced on February 5, 2008, and that it should award him with Good Conduct Time ("GCT") from that date. He also contends that the "court misapplied my guidelines under [U.S.S.G.] § 5G1.3, whenever they applied subsection (c), rather than subsection (b)."

In connection with the preparation of the Respondent's answer in this case, the BOP's Designations and Sentence Computation Center ("DSCC") reviewed the Petitioner's federal sentence computation for accuracy. It determined that the federal sentence was vague because the initial Judgment and Commitment Order appeared to attempt to order prior custody credit, as opposed to an adjustment or downward departure under U.S.S.G. § 5G1.3. On December 16, 2016, as a result of the inquires made by the DSCC during its review, the federal district court issued the final version of the Amended Federal Judgment and Commitment Order, which provides that the Petitioner's federal sentence now is:

> 185 MONTHS on each of Counts 25, and 26 and a term of 120 months on Count One, all to be served concurrently. This sentence shall be served partially concurrently with the sentence imposed on May 20, 2005 by Judge David W. Heckler of the Bucks County Court of Common Pleas for burglary and criminal trespass of not less than 2 1/2 years nor more than 9 years in case number CP–09–CR–0007454–2004. Specifically, the within sentence shall be served concurrently with the said Bucks County sentence of February 5, 2008 pursuant to the provision of U.S.S.G. § 5G1.3 (*(b) consistent with the reasoning provided on the records of this sentence.)

Based upon the December 16, 2016, Amended Judgment and Commitment Order, the BOP re-calculated the Petitioner's federal sentence as a 167-month and 13-day sentence, which reflects the sentence of 185 months adjusted under U.S.S.G. § 5G1.3(b) by 534 days (representing time served against an undischarged state sentence from February 5, 2008, through July 22, 2009). Under 18 U.S.C. § 3585(a), which governs the date a federal sentence commences, the BOP calculated the Petitioner's federal sentence to have commenced on July 23, 2009, which is the date the federal district court originally sentenced him.

*Id.* at *1–3 (citations to case documents omitted). Further, in rejecting Lenegan's claims on the merits, the Court concluded:

### 1. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

> Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. *See, e.g., Ruggiano*, 307 F.3d at 126. The BOP's policies regarding sentence computation at issue in this case are set forth in Program Statement 5880.28, *Sentence Computation Manual* ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, *Designation of State Institution for Service of Federal Sentence* ("PS 5160.05").

The BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."); *see, e.g., Rashid v. Quintana*, 372 F. App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing *Unites States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that circumstances the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making

6

these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. *See, e.g., Bowman,* 672 F.2d at 1153–54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.,* granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. *See, e.g., George,* 463 F. App'x at 138 n.4.

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12–13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrent* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A–33; PS 5160.05, Pages 2–12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive* to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12–13, 31–33; *see also* PS 5160.05, Pages 2–12.

The second scenario is what occurred in the Petitioner's case. He was in the primary custody of the Commonwealth of Pennsylvania on the date his federal sentence was imposed and, therefore, the BOP has computed his federal sentence to have commenced on July 23, 2009–the date the federal

7

court imposed it.[4] PS 5880.28, Chapt. 1, Page 13, 32A–33; PS 5160.05, Pages 2–12. *The BOP thus commenced the Petitioner's sentence on the earliest date that it could commence.* The Petitioner's contention that the BOP should have commenced his federal sentence on February 5, 2008, has no merit. There is no basis for this Court to disturb the BOP's determination regarding the date the Petitioner's federal sentence commenced.

Importantly, however, because the BOP cannot under § 3585(a) commence a federal sentence prior to the date it is imposed, the federal district court's citation to § 5G1.3(b), together with its directive for the federal sentence to run partially concurrently with the state sentence as of February 5, 2008, signaled to the BOP the court's intent to adjust the Petitioner's federal sentence. Therefore, pursuant to § 5G1.3(b)(1), the BOP adjusted the Petitioner's 185-month term of imprisonment by the 534 days

---

[4] 18 U.S.C. § 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention *prior to the commencement of his federal sentence*. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> 
> (1) as a result of the offense for which the sentence was imposed; or
> 
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> 
> *That has not been credited against another sentence.*

(Emphasis added). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. *Wilson*, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. *See, e.g., Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007).

In his declaration, the Management Analyst at the DSCC explained that the BOP has granted the Petitioner prior custody credit against his federal sentence for the following periods of time: (1) July 11, 2004; (2) September 15, 2004, through September 18, 2004; (3) September 26, 2004; (4) January 21, 2005, through February 2, 2005; (5) April 14, 2005, through April 21, 2005; and (6) April 25, 2005, through May 19, 2005. The Petitioner received credit against his state sentences for time served from February 1 through February 2, 2005, and for time served from April 29, 2005, through May 20, 2005. Although § 3585(b) prohibits the BOP from granting federal sentence credit for time credited against any other sentence, in *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971) a limited exception to this prohibition was established and it permits the BOP to grant qualified non-federal presentence credit in limited circumstances. Those circumstances were present in the Petitioner's case and it enabled him to receive some double credit.

8

he served from February 5, 2008, through July 22, 2009 (the day before the federal sentence was imposed). The § 5G1.3(b) adjustment essentially reduced the duration of the Petitioner's federal sentence by 534 days.

### 2. The Petitioner Is Not Entitled to GCT Credit for the 534-Day Period Between February 5, 2008, and July 22, 2009

The computation of GCT is governed by 18 U.S.C. § 3624(b), which provides, in relevant part, that "a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive *credit toward the service of the prisoner's sentence*, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1) (footnote omitted) (emphasis added).

The Petitioner received GCT for the 52 days that were credited against his federal sentence as prior custody credit under § 3585(b) and *Willis* credit (*see* footnote [4]) and also for all time served against his federal sentence from July 23, 2009 (the date his federal sentence commenced) until July 27, 2021 (his projected federal sentence satisfaction date). In his declaration, the Management Analyst at the DSCC explains that the Petitioner "may not receive GCT for the 534 days that were subtracted from the length of his federal sentence as a sentence adjustment under U.S.S.C. § 5G1.3(b), because this 534 [day] period is not time served against his federal sentence. Although exception was made (and GCT was granted) for those days within the 534 day period that was credited as federal prior custody credit, 18 U.S.C. § 3624(b) does not permit the [BOP] from using time not credited against an inmate's federal sentence to compute GCT." (*Id.*) The Petitioner did not provide any argument to counter this explanation of why he is not entitled to additional GCT, and there is no basis for this Court to disturb the BOP's decision regarding GCT. *See also Lopez v. Terrell*, 654 F.3d 176, 183–85 (2d Cir. 2011) (deferring to the BOP's interpretation of § 3624(b)).

*Id.* at *3–6 (citations to case documents omitted). Subsequently, the Court adopted the Report and Recommendation, and denied Lenegan's First § 2241 Petition on the merits. *Lenegan I*, No. 16-159 Erie, 2017 WL 6032149, at *3 (W.D. Pa. Dec. 6, 2017).

9

### B. Lenegan's Present § 2241 Petition

In the Present § 2241 Petition, Lenegan again challenges the BOP's execution of his sentence with respect to time allegedly spent in federal custody prior to July 23, 2009. Specifically, Lenegan raises the following claim for relief:

> Claim One: The "BOP [is] not accepting the Sentencing Judge's oral pronouncement of earn[ed] [GCT]," in that Lenegan earned 81 days of GCT from "Feb. 5, 2008 through July 22, 2009," and instead, the "BOP adjusted prior jail credit of 534 days at the end of [the] sentence." (Present § 2241 Pet. 6–7.)[5]

Lenegan provides no further argument or facts to support his claim. *See generally id.*

## II. ANALYSIS

Pursuant to 28 U.S.C. § 2244(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a). Although § 2241 is not specifically referenced in § 2244(a), "[i]t has become well established that § 2244(a), as amended by the AEDPA, bars second or successive § 2241 applications that seek to relitigate issues that were adjudicated in a prior § 2241 proceeding." *Quiller v. Wilson*, No. 1:12cv426 (LO/JFA), 2012 WL 6725612, at *4 (E.D. Va. Dec. 21, 2012), *aff'd sub nom. Quiller v. Blackburns*, 512 F.

---

[5] The Court notes that, while Lenegan divides his arguments into three grounds for relief, the three grounds for relief are related and Claim One encompasses all three grounds.

10

App'x 384 (4th Cir. 2013); *see Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1350, 1352 (11th Cir. 2008) (affirming the district court's dismissal of a § 2241 petition as successive where the petitioner "alleg[ed] he was denied certain credits toward his sentence to which he was entitled" and the petitioner had previously filed a § 2241 petition raising the same grounds for relief, which had been denied on the merits); *Queen v. Miner*, 530 F.3d 253, 254–55 (3d Cir. 2008) (discussing that § 2244(a) barred a petitioner's successive § 2241 petition, in which the petitioner had sought to challenge the same institutional conviction that he had challenged in a prior § 2241 petition); *Valona v. United States*, 138 F.3d 693, 695 (7th Cir. 1998) (discussing that "§ 2244(a) bars successive petitions under § 2241 directed to the same issue concerning execution of a sentence"); *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997) (dismissing the petitioner's § 2241 petition, which "rais[ed] the same challenge to the computation of [the petitioner's] sentence that he had raised in [two prior motions]," pursuant to 28 U.S.C. § 2244(a) "[b]ecause this issue [had] already been decided on its merits").

Similarly, prior to the enactment of the statutory bar on successive habeas petitions, the Supreme Court developed the "abuse of the writ" doctrine, which limited the review of successive habeas petitions. *See McCleskey v. Zant*, 499 U.S. 467, 490–96 (1991). Under the abuse of the writ doctrine, "a court could decline to hear a claim that was both raised and adjudicated in an earlier petition." *Stanko v. Davis*, 617 F.3d 1262, 1270 (10th Cir. 2010) (citing *Sanders v. United States*, 373 U.S. 1, 11–12 (1963)). Further, in applying the abuse of the writ doctrine, "grounds may be considered the same

even when supported by different legal arguments." *Id.* (citation omitted). Nevertheless, "[e]ven if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground." *Sanders*, 373 U.S. at 16.

Here, Lenegan's Present § 2241 Petition presents the same grounds for relief that were set forth in Lenegan's First § 2241 Petition. Specifically, Lenegan contends that the BOP improperly calculated his federal sentence by miscalculating the date on which his federal sentence commenced. (*See* § 2241 Pet. 6–7; *see also* ECF No. 14–6, at 4.) Lenegan argues that as a result of the BOP's improper calculation, he is entitled to additional GCT. (*See* § 2241 Pet. 6–7; *see also* ECF No. 14–6, at 4, 10.) However, the United States District Court for the Western District of Pennsylvania previously addressed this claim and rejected it on the merits. *See Lenegan I*, No. 16–159 Erie, 2017 WL 6032149, at *3 (W.D. Pa. Dec. 6, 2017) (adopting the Report and Recommendation, which recommended that Lenegan's First § 2241 Petition be denied on the merits). As such, the Present § 2241 Petition is an improper successive petition and an abuse of the writ, and Lenegan fails to demonstrate that the ends of justice warrant consideration of his Present § 2241 Petition.[6] Accordingly, for these reasons, the Present § 2241 Petition will be denied.

---

[6] If the Court were to address the merits of Claim One in Lenegan's Present § 2241 Petition, the claim would be dismissed for the same reasons that the claims in Lenegan's First § 2241 Petition were dismissed. *See Lenegan I*, 2017 WL 6032149, at *1–3.

12

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 13) will be granted.

Lenegan's claim will be dismissed. The § 2241 Petition (ECF No. 1) will be denied.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
Date: February 5, 2020  SENIOR UNITED STATES DISTRICT JUDGE
Richmond, Virginia